**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH**

| | | |
|---|---|---|
| GEORGE JESKEY, and DIETRA JESKEY,<br><br>Plaintiffs,<br><br>vs.<br><br>TM CARRIER, INC., a corporation, and ILSHAT NOKHATBAYEV,<br><br>Defendants. | ) | Case No.: 2:26-cv-01709-MJH |

**OPINION AND ORDER**

Plaintiffs, George Jeskey and Dietra Jeskey, bring this action seeking damages for personal injury and loss of consortium against individual Defendant, Ilshat Nokhatbayev, and his employer, Defendant TM Carrier, Inc. ("Defendant Carrier"). Plaintiffs' claims arise out of an alleged motor vehicle accident between vehicles driven by Mr. Jeskey and Mr. Nokhatbayev. Plaintiffs have moved to remand the case to the Court of Common Pleas of Allegheny County. (ECF No. 9). The matter is now ripe for decision.

Upon consideration of Defendant Carrier's Notice for Removal (ECF No. 1), Plaintiffs' Complaint (ECF No. 1-2), Plaintiffs' Motion to Remand (ECF No. 9), Defendant Carrier's Response in Opposition to Plaintiffs' Motion to Remand (ECF No. 13), the parties' respective briefs (ECF Nos. 10, 14, and 15), and for the following reasons, the Plaintiffs' motion will be denied.

**I. Background**

Plaintiffs's allege that on June 5, 2025, George Jeskey was operating a motor vehicle, and his wife, Dietra Jeskey, was a front seat passenger. (ECF No. 1-2 ¶¶ 10, 24). Plaintiffs alleged that Mr. Nokhatbayev negligently drove through a stop sign and collided head-on with Plaintiffs' vehicle. (*Id.* ¶¶ 11–16). As a result of the collision, Plaintiffs allege a variety of physical and emotional injuries and seek damages for the loss of the other spouse's consortium. (*Id.* ¶¶ 21(a)–(i), 25(a)–(g), 28(c), 30(c)).

On April 21, 2026, Plaintiffs filed their complaint against Defendants in the Court of Common Pleas of Allegheny County. (ECF No. 9 ¶ 2). Defendant Carrier was served with the Complaint on May 4, 2026.[1] (*Id.*; ECF No. 13 ¶ 2). In their Complaint, Plaintiffs both assert individual claims for negligence and loss of consortium demanding damages "in a sum in excess of FIFTY THOUSAND ($50,000.00) DOLLARS" against both Defendants.[2] (ECF No. 1-2 ¶¶ 22, 26).

On or about June 19, 2026, Defendant Carrier served Plaintiffs with a Request for Admission ("RFA") pursuant to Pennsylvania Rule of Civil Procedure 4014. (ECF No. 1-3). Defendant Carrier's only RFA read as follows: "Plaintiff's damages, if proven at trial, are valued in excess of $75,000.00, exclusive of interests and costs." (*Id.* at 5). On July 15, 2026, Plaintiffs served a response Defendant Carrier's RFA confirming that they were seeking more than

[1] To date, Defendant Nokhatbayev has not been served. Defendant Carrier was within its rights to remove the action prior to Defendant Nokhatbayev being served. *See* 28 U.S.C. § 1446(b)(2)(A).
[2] Claims worth less than $50,000 are mandatorily referred to arbitration by local rule. Allegheny Cnty. Ct. C.P. L.R. 1301(1)(a). The Pennsylvania Rules of Civil Procedure only require a plaintiff to "state whether the amount claimed does or does not exceed the jurisdictional amount requiring arbitration referral by local rule." Pa. R. Civ. P. 1021(c).

$75,000 in damages. (ECF No. 1-4, at 3). On August 13, 2026, 29 days later, Defendant Carrier removed the action to this Court. (ECF No. 1, at 4).

**II. Standard of Review**

A district court has original subject matter jurisdiction over civil actions between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). Actions that satisfy section 1332, but that are filed in state court, may be removed to the federal district court in the district where the state case is pending. 28 U.S.C. § 1441(a).

"Two thirty-day clocks limit the time within which a defendant may remove a case." *McLaren v. UPS Store Inc.*, 32 F.4th 232, 236 (3d Cir. 2022); 28 U.S.C. § 1446. The first clock begins running "after receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ." 28 U.S.C. § 1446(b)(1). "If the case stated by the initial pleading is not removable," the first clock never begins to run. *Id.* § 1446(b)(3). Instead, removal is governed by the second clock, which begins to run "after the receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is . . . removable." *Id.* If the defendant fails to remove the action in a timely manner, upon motion, the case may be remanded back to state court. 28 U.S.C. § 1447(c); *Berry v. Wal-Mart Stores, East L.P.*, 583 F. Supp. 3d 671, 675 (E.D. Pa. 2022). Such motions must be made "within 30 days after the filing of the notice of removal." 28 U.S.C. § 1447(c). Because procedural defects are subject to waiver, a district court may not remand a case *sua sponte* for violating one of section 1446(b)'s 30-day time limits. *See In re FMC Corp. Packaging Sys. Div.*, 208 F.3d 445, 451 (3d Cir. 2000).

The party seeking removal bears the burden of showing that "the case is properly before the federal court." *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). Furthermore, the statutes governing removal "are to be strictly construed against removal" and "all doubts should be resolved in favor of remand." *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990).

**III. Analysis**

Plaintiffs argue that Defendant's Notice for Removal is procedurally flawed, because it was filed more than 30 days after Defendant Carrier was served with Plaintiffs' state-court Complaint. (*Id.* ¶ 6). Defendant Carrier admits, and the record before this Court shows, that Defendant Carrier's Notice for Removal was filed more than 30 days after being served. (ECF No. 13 ¶¶ 4–6). Plaintiffs' state-court Complaint was served on May 4, 2026, and Defendant Carrier's Notice for Removal was filed on August 13, 2026—more than 100 days after service. (ECF No. 9 ¶¶ 3, 6; ECF No. 13 ¶¶ 3, 6). The crux of Plaintiffs' motion concerns whether the Complaint placed the Defendants on notice that the case's amount in controversy exceeded $75,000, and therefore, that "all the elements of federal jurisdiction [were] present." *McLaren*, 32 F.4th at 236. If it did, section 1446(b)(1)'s first clock began running on May 4, 2026, and Defendant's August 13, 2026 removal was untimely and procedurally defective, such that the case requires remand. If it did not adequately put the Defendant's on notice, then the Court must determine whether Defendant Carrier's removal complies with section 1446(b)(3).

**A. Whether Section 1446(b)(1)'s Clock Began Running**

Plaintiffs argue section 1446(b)(1)'s clock began running because their Complaint informed Defendants "to a substantial degree of specificity, [that] all the elements of federal

jurisdiction [were] present." *McLaren*, 32 F.4th at 236 (first alteration in original) (quoting *Foster v. Mut. Fire, Marine & Inland Ins. Co.*, 986 F.2d 48, 53 (3d Cir. 1993)). Plaintiffs contend their Complaint contained "two separate claims by two individual Plaintiffs," both seeking damages "in excess of $50,000." (ECF No. 10, at 3). Plaintiffs maintain these two demands "directly and explicitly" state claims for damages "in excess of $100,000." (ECF No. 9 ¶ 11).

Defendant Carrier denies that Plaintiffs' Complaint provided "notice that the value of Plaintiffs' claims exceeded" $75,000. (ECF No. 14, at 2). Specifically, Defendant Carrier contends that *ad damnum* clauses, seeking damages "in excess of $50,000," are insufficient to trigger section 1446(b)(1)'s first 30-day clock

The Third Circuit utilizes a "bright-line" approach to determine whether a complaint triggers section 1446(b)'s first clock. *McLaren*, 32 F.4th at 237. Under this approach, section (b)(1)'s clock is triggered where the complaint "informs the reader, to a substantial degree of specificity, [that] all the elements of federal jurisdiction are present." *Id.* at 236 (alteration in original). Importantly, *McLaren* sets forth that section (b)(1)'s "inquiry begins and ends within the four corners of the pleading." *Id.* (quoting *Foster*, 986 F.2d at 53). All this Court may consider is what the Defendants could "ascertain from the four corners of the plaintiff's complaint." *Id.* at 239. A complaint may demonstrate that the amount in controversy exceeds $75,000 by (1) offering "a clear statement of the damages sought"; (2) alleging "sufficient facts from which damages [could] be readily calculated"; or (3) "affirmatively reveal[ing] on its face that [plaintiff] is seeking damages in excess of the minimum jurisdictional amount." *Id.* at 237 (internal quotation marks and citations omitted).

Since *McLaren* was decided, the Third Circuit has not addressed whether *ad damnum* clauses demanding "damages in excess of $50,000" constitute "clear statement[s] of the damages

sought." 32 F.4th at 237. However, every court in the Third Circuit that has addressed the question has answered in the negative. *Mason v. Sam's Club #6693, Sam's E. Inc.*, No. CV 25-05038, 2026 WL 1134866, at *6, 8 n.6 (E.D. Pa. Apr. 27, 2026); *Kelley v. Allstate Vehicle & Prop. Ins. Co.*, No. CV 25-01298, 2025 WL 2711154, at *1–2. (W.D. Pa. Sept. 23, 2025); *Baucom v. Torres Vidal*, No. CV 24-01818, 2024 WL 5108439, at *1, 4 (E.D. Pa. Dec. 12, 2024); *Foreacre v. Wal-Mart Stores, Inc.*, No. CV 22-04231, 2023 WL 349787, at *1, 3 (E.D. Pa. Jan. 20, 2023); *Miller v. Whole Foods Market, Inc.*, No. CV 22-02495, 2022 WL 16950265, at *1 (E.D. Pa. Nov. 15, 2022).

The Plaintiffs' Complaint also alleges injuries indistinguishable from those compiled in *Bambino-Forte*. 2025 WL 3543620, at *4. It alleges that George Jeskey suffered:

> Facial Trauma; Dental trauma with multiple loss of teeth; Mandibular trauma with injury and damage to bones, nerves, and surrounding soft tissue of the mandible; Right shoulder trauma; Left shoulder trauma; Chest trauma with resulting cardiovascular injury; Injury and damage to the nerves, joints, discs, cartilage, surrounding soft tissue and ligaments of the cervical spine; Shock with injury and damage to the nerves and nervous system; Other serious and permanent injuries.

(ECF No. 1-2 ¶ 21). The Complaint further alleges that Dietra Jeskey suffered:

> Injury and damage to the bones, nerves, joints, ligaments, and surrounding soft tissue of the left hand; Injury and damage to the bones, nerves, joints, ligaments, and surrounding soft tissue of the left wrist; Injury and damage to the bones, nerves, joints, ligaments, and surrounding soft tissue of the right wrist; Injury and damage to the bones, nerves, joints, ligaments, and surrounding soft tissue of the left ankle; Injury and damage to the nerves, joints, discs, cartilage, surrounding soft tissue and ligaments of the cervical spine; Shock with injury and damage to the nerves and nervous system; Other serious and permanent injuries.

(*Id.* ¶ 25). In addition, both Plaintiffs allege that they suffered emotional harms, and both seek damages for the loss of the other's consortium. (*Id.* ¶¶ 28, 30). The court concluded that these allegations do "not provide enough facts to allow the ready calculation of damages." *Bambino-*

*Forte*, 2025 WL 3543620, at *4; *McLaren*, 32 F.4th at 237. As such, plaintiffs did not establish to a "substantial degree of specificity" that the case's amount in controversy exceeded $75,000. *McLaren*, 32 F.4th at 237. The "case stated by the initial pleading" was therefore not removable, and the Complaint's service did not begin section 1446(b)(1)'s 30-day clock. 28 U.S.C. § 1446(b)(3).

Plaintiffs contend that their Complaint "unequivocally demand[ed] damages in excess of $100,000," because on its face it contains two claims seeking damages "in excess of $50,000." (ECF No. 10, at 3). The Court interprets Plaintiffs' contention as an argument that the Complaint affirmatively "reveal[s] on its face" that Plaintiffs were seeking damages in excess of $75,000. *McLaren*, 32 F.4th at 237. Other courts in this Circuit have rejected this argument. *Baucom*, 2024 WL 5108439, at *4; *Miller*, 2022 WL 16950265, at *3. In *Baucom*, a wife was operating a motor vehicle when she was struck from behind by the defendant. 2024 WL 5108439, at *1. In *Miller*, a wife fell on an allegedly slippery floor. 2022 WL 16950265, at *1. In both cases, the wife and her husband brought suit seeking damages for the wife's injuries and the husband's loss of consortium. *Baucom*, 2024 WL 5108439, at *1; *Miller*, 2022 WL 16950265, at *1. In both cases, the plaintiffs' complaints put forward "two separate claims by two individual Plaintiffs for damages 'in excess of $50,000.'" (ECF No. 10, at 3); Compl. ¶¶ 17, 21, *Baucom*, No. CV 24-01818 (E.D. Pa. filed May 30, 2024), ECF No. 1-5; Compl. ¶¶ 16, 19, *Miller*, No. CV 22-02495 (E.D. Pa. filed June 27, 2022), ECF No. 1-6. In both cases, the plaintiffs pled serious injuries "without alleging any monetary amounts." *Miller*, 2022 WL 16950265, at *3; *Baucom*, 2024 WL 5108439, at *3. And in both cases, the court found that the plaintiffs' complaint did not put the defendant "on notice that [the] case was removable." *Baucom*, 2024 WL 5108439, at *3; *Miller*, 2022 WL 16950265, at *3.

This Court, consistent with this Circuit's post-*McLaren* case law, finds that Plaintiffs' Complaint does not affirmatively "reveal on its face" that Plaintiffs were seeking an amount above $75,000. 32 F.4th at 237. While Plaintiffs' Complaint alleges that Plaintiffs suffered "serious and permanent injuries," it fails to allege any specific monetary amount of damages. (ECF No. 1-2 ¶¶ 21(i), 25(g)). While the Plaintiffs here, unlike those in *Baucom* and *Miller*, both seek damages for negligence and loss of consortium, that fact is a distinction without a difference. (Id. ¶¶ 22, 26). The Court sees no reason to depart from other district courts in this Circuit merely because, here, each *ad damnum* clause seeks damages for two claims rather than one.

Here, Plaintiffs' Complaint does not "provide a clear statement of the damages sought or sufficient facts from which damages can be readily calculated, nor does it affirmatively reveal on its face that [Plaintiffs are] seeking damages in excess of the minimum jurisdictional amount." *McLaren*, 32 F.4th at 237. Plaintiffs' Complaint did not identify that this case's amount in controversy exceeded $75,000 to a "substantial degree of specificity" as required by *McLaren*'s "bright-line" approach; therefore, the Complaint never commenced section 1446(b)(1)'s first 30-day clock. *Id.*

**B. Whether Defendant Carrier's Notice for Removal Satisfies Section 1446(b)(3)**

The Court now turns its attention to whether Defendant Carrier's Notice for Removal satisfied the statutory requirements of 28 U.S.C. § 1446(b)(3). Defendant Carrier argues that Plaintiffs' July 15 RFA admission was an "other paper" from which it could "first be ascertained that the case . . . [had] become removable." (ECF No. 14, at 4); 28 U.S.C. § 1446(b)(3). It argues that removal was properly made within section (b)(3)'s 30-day clock because it received the RFA

on July 15 and filed its Notice for Removal on August 13. (ECF No. 14, at 6). Plaintiffs do not respond to this argument. *See generally* (ECF Nos. 9, 10, 15).

Although the Third Circuit has never explicitly defined "other paper," the term has been broadly construed to include RFAs. *Minissale v. State Farm Fire & Cas. Co.*, 988 F. Supp. 2d 472, 477 (E.D. Pa. 2013) ("district courts in our circuit have interpreted [other paper] to include requests for admission"). Our sister circuits have agreed with this construction. *See Wilson v. Gen. Motors Corp.*, 888 F.2d 779, 782 (11th Cir. 1989); *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 466 (6th Cir. 2002); *Romulus v. CVS Pharm., Inc.*, 770 F.3d 67, 78 (1st Cir. 2014); *Carmardelli v. Wal-Mart Stores, Inc.*, 545 F. Supp. 2d 595, 600 (W.D. Tex. 2008); *Murchison v. Progressive N. Ins. Co.*, 564 F. Supp. 2d 1311, 1314 (E.D. Okla. 2008). Again, Plaintiffs provide the Court with no reason, nor has it found any reason, to depart from this understanding. The Court thus agrees with Defendant Carrier's argument that Plaintiffs' RFA admission was an "other paper" within the meaning of section (b)(3).

In addition, the record reveals no other document received by Defendants earlier than the RFA admission that could trigger section (b)(3)'s 30-day clock. The RFA admission was the first document that could have put Defendants on notice to a "substantial degree of specificity" that the case's amount in controversy exceeded $75,000. *McLaren*, 32 F.4th at 237. The Court, therefore, agrees with Defendant Carrier that Plaintiffs' RFA admission constituted the first "copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

Section 1446(b)'s second 30-day clock began upon Defendant Carrier's receipt of Plaintiffs' July 15 admission. Its Notice for Removal was filed on August 13, within 30 days of that date.[3]

## IV. Conclusion

Plaintiffs' original Complaint was sufficiently vague that Defendants could not ascertain whether the amount in controversy exceeded the statutory minimum of 28 U.S.C. § 1332. Consequently, the Complaint did not trigger the first clock under section 1446(b). Instead, section 1446(b)(3)'s second clock began upon Defendant Carrier's receipt of Plaintiffs' July 15 RFA admission—which stated unequivocally that the case's amount in controversy exceeded $75,000. As Defendant Carrier filed its Notice for Removal before section 1446(b)(3)'s 30-day clock elapsed, its removal was timely.

The Court finds no procedural defect in Defendant Carrier's Notice for Removal. Accordingly, Plaintiffs' Motion to Remand will be denied.

DATED this 13th day of October 2026

BY THE COURT:

Marilyn J. Horan

MARILYN J. HORAN
United States District Judge

[3] Defendant Carrier's removal also satisfied section 1446(c), which does not permit removal under section 1446(b)(3) "on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action." The action was commenced on April 21, 2026, and the removal occurred on August 13, 2026, well within one year of commencement.